UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE ARNOLD,<br><br>Plaintiff,<br><br>vs.<br><br>RADISSON HOTEL CHATSWORTH, LANTING HOTEL VENTURES I, INC., LANTING HOTEL VENTURES II, INC., and LAEROCK 2000 INCOME FUND, L.P.,<br><br>Defendants. | Case No. 2:08-cv-08189-JHN-CWx<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Judge: Honorable Jacqueline H. Nguyen |

This is an action for damages brought by Plaintiff Connie Arnold against Defendants Radisson Hotel Chatsworth, Lanting Hotel Ventures I, Inc., Lanting Hotel Ventures II, Inc., and Laerock 2000 Income Fund L.P.. The Complaint seeks relief pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; California Health & Safety Code § 19955 *et seq.*; California Code of Regulations Title 24-2 ("Title 24-2"); and the California Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54 and 54.1. The complaint alleges that Plaintiff is a person with physical disabilities, that she visited the Radisson Hotel located at 9777 Topanga Canyon, Chatsworth, California ("Hotel"), and that Defendants failed to make the Hotel facilities accessible to and useable by persons with disabilities such as Plaintiff. Among other things, Plaintiff claims that "Defendants have failed to

provide accessible guestrooms with important amenities, guest parking, guest spa, pool and health club facilities, including public restrooms, as well as other related public facilities that are offered to able-bodied persons." (Compl. ¶ 1.) Plaintiff seeks damages pursuant to the CDPA, Cal. Civ. Code § 54.3.[1]

The parties entered into a Consent Decree and Order adopted by the Court on March 16, 2010 (docket no. 39) for all injunctive relief, requiring Defendants to remove barriers and make the Hotel's facilities readily accessible to people with disabilities. On September 14, 2010, the Court held a court trial to determine Defendants' liability for damages. The following constitute findings of fact and conclusion of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[2]

## I.  FINDINGS OF FACT

Plaintiff Connie Arnold, who resides in Northern California, is disabled as a result of juvenile rheumatoid arthritis and requires a wheelchair for mobility. Plaintiff is an activist in the disabled community. Some of her activities include testifying on disabilities-related issues before the California legislature and federal government, and participating in demonstrations for the civil rights of persons with disabilities. Plaintiff has filed numerous civil lawsuits in connection with disabilities rights.

---

[1] The Court previously held that Plaintiff may pursue damages under the CDPA but not under California Civil Code section 52. (Order Granting Defs.' Mot. in Limine No. 2, docket no. 61.)

[2] To the extent any findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent any conclusions as stated may be deemed findings of fact, they shall also be considered findings.

On October 7, 2007, Plaintiff and her mother, Jean Arnold, traveled to Los Angeles County for the purposes of visiting Northridge Hospital and Van Nuys for a driver's evaluation. This evaluation was necessary in order for Plaintiff to obtain and operate a new driving system for an accessible van. She later acquired a van with the new driving system.

Prior to this trip, Plaintiff telephoned the Hotel and made reservations for herself and her mother to stay for two nights. She requested a room with a roll-in shower and two beds with "Sleep Number" mattresses as advertised on the Hotel's website. The Hotel employee she spoke with informed her that the ADA accessible rooms had only one bed and none had roll-in showers. Nevertheless, Plaintiff decided to stay at the Hotel because its location was convenient for her to attend the diagnostic evaluation and to see friends in the area of the Hotel.

Upon arriving at the hotel with her mother, Plaintiff parked in a designated van-accessible parking space, but had difficulty traveling from the van to the Hotel because a ramp encroached into the parking space's unloading aisle and because the path of travel was obstructed by a bench and cigarette waste can. In the hotel lobby, Plaintiff required assistance to register because the registration counter had no lowered area for the use of disabled patrons.

In the designated accessible guestroom, Plaintiff encountered barriers including a heavy guestroom door, a closet with a too-narrow door and no lowered pole or shelf, obstructions of the floor space between the closet and bed, insufficient knee clearance at the desk, and incorrectly configured toilet and shower/tub facilities in the bathroom. The guestroom also had only one bed, which Plaintiff and her mother found uncomfortable and painful because of its hardness. After one night's stay, Plaintiff and her mother planned on moving to

another hotel but decided to stay when the Hotel offered them an inaccessible guestroom that had two "Sleep Number" beds.

During her stay, Plaintiff also discovered that she could not use the Hotel's pool because there was no pool lift. Furthermore, Plaintiff faced problems when she and her mother ate at the Hotel's restaurant, Hot Tomato!, because it had no accessible seating for wheelchair users. The Hotel's bar also had no lowered section or accessible seating.

Lastly, Plaintiff encountered barriers in various paths of travel around the Hotel. These included obstructions such as benches and trash receptacles, drop-offs with no wheel guards, slippery ramps and ramps with excessive slopes, and noncompliant grab bars.

Plaintiff and her mother arrived at the Hotel in the late afternoon of October 6, 2007. They were away from the Hotel from about 10 a.m. to 8:30 p.m. on October 8, 2007, and they checked out of the Hotel before 9 a.m. on October 9, 2007. During their stay, Plaintiff and her mother did not complain to the Hotel staff other than about the hardness of the bed in the accessible guestroom.

On December 11, 2008, Plaintiff filed a Complaint in this case. Plaintiff engaged an expert in physical and programmatic accessibility for persons with disabilities to conduct an accessibility inspection of the Hotel. That inspection confirmed the existence of the barriers Plaintiff identified at the Hotel.

The case proceeded to trial, with a court trial held on September 14, 2010. At trial, Plaintiff requested damages in the amount of $4,000 per violation of

federal and state law. Plaintiff did not present proof of actual damages but stated that she seeks not merely statutory damages but emotional damages.

## II. CONCLUSIONS OF LAW

The parties do not dispute that Defendants are obligated to comply with federal and California laws regarding disability discrimination.[3] Additionally, at trial, Defendants did not present evidence contesting the existence of the violations identified by Plaintiff at the time of her visit to the Hotel.[4] Therefore, the question now is the amount of damages that should be awarded to Plaintiff for those violations. Defendants argue that damages should be limited or should not be awarded for two reasons. First, they argue that Plaintiff sought access to the

---

[3] The CDPA provides that individuals with disabilities "shall be entitled to full and equal access, as other members of the general public," to public accommodations. Cal. Civ. Code. § 54.1(a)(1). The CDPA also makes a violation of the ADA a violation of its provisions. *Id.* at (d).

[4] Though Defendants do not dispute the existence of violations, they do dispute the admissibility of some evidence of those violations. Specifically, Defendants seek to strike the declaration of Plaintiff's expert witness, Karl Danz, on the basis that he relied on building records to form his opinions but those records were never disclosed to Defendants. (Defs.' Suppl. Br. in Support of Mot. to Strike Expert Test.; docket no. 74.) Defendants argue that Plaintiff's expert disclosure did not include any information that put them on notice that Danz was relying on construction records as a basis for his opinion. Defendants also argue that Plaintiff had originally identified construction records as exhibits for trial but were never provided with copies of the records. The Court denies the motion to strike because the expert disclosure in fact did disclose that Danz's opinions were based partly on "review of limited construction documents indicating the date of construction of some of the facilities, and additions and renovations that occurred at the Hotel . . . and some documents regarding the permitting history of the subject facilities." (Pl.'s Supp'l Br. in Opp'n to Defs.' Mot. to Strike Test.; docket no. 75, Ex. A to Decl. of Jeff. A. Harrison, at 3.) Moreover, Plaintiff was not required to provide copies of the records because Plaintiff did not introduce the records at trial.

Hotel not as an ordinary customer but to build a litigation action. Second, Defendants argue that Plaintiff may not obtain damages for violations she did not actually encounter.

**A. Whether Plaintiff Was a Regular Patron of the Hotel**

Defendants argue that Plaintiff was not an "ordinary customer" under *Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971 (9th Cir. 2010).[5] In *Antoninetti*, the Ninth Circuit held that, under the CDPA, the plaintiff could recover for violations during visits to Chipotle restaurants in which "he actually presented himself to the restaurant on a particular occasion, as any other customer would do, with the intent of being . . . served and to purchase food . . . in the manner offered . . . [and] actually encountered access to . . . the restaurant that was not full and equal." 2010 WL 3665525, at *9 (quoting *Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1226 (2009)) (alterations in original). The court held that the plaintiff could recover for five visits he made to Chipotle restaurants as a customer but that he could not recover for three other visits that were made for the purposes of litigation if the plaintiff did not purchase food on those visits. *Id*. at *10.

Similarly here, Defendants contend that Plaintiff was not an ordinary customer because she visited the Hotel not for purposes of enjoyment as a regular patron, but instead for the purpose of building a litigation action. Defendants ask the Court to consider evidence of Plaintiff's purpose such as that she took

---

[5] After the court trial in this action, the Ninth Circuit issued an amended opinion in the *Antoninetti* case. Nos. 08-55867, 08-55946, 09-55327, 09-55425, 2010 WL 3665525 (9th Cir. Sept. 22, 2010). All further references to this case are to the latter opinion.

photographs and notes regarding access violations at the Hotel, as well as Plaintiff's extensive history of litigating ADA claims.

However, Plaintiff has shown facts sufficient to prove that she was an ordinary patron of the Hotel's services. Plaintiff testified that she had legitimate reasons for staying in the area: the Hotel was conveniently located near the places Plaintiff needed to go for the driver's evaluation and was also close to Plaintiff's old neighborhood, where she could easily visit friends. Thus, Plaintiff presented herself to the Hotel as any customer would have, with the intent of having a place to stay during her travels. *See id.* at *9.

Furthermore, in *Antoninetti*, the Ninth Circuit stated that "[c]ourts must tread carefully before construing a Disability Act plaintiff's history of litigation against him." *Id.* at *7. In that case, the court found it inappropriate to base a credibility determination on past litigation because the plaintiff showed that he wanted to enjoy the same experience that non-disabled customers had at Chipotle restaurants. *Id.* As set forth above, the Court finds that similarly here, Plaintiff stayed at the Hotel for the legitimate purpose of being a guest and enjoying the Hotel experience. The Court therefore declines to consider Plaintiff's litigation history as proof that she was not an ordinary customer. Accordingly, the Court holds that Plaintiff has standing to recover damages under the CDPA.

**B. Whether the Alleged Violations Denied Plaintiff Equal Access to the Hotel's Facilities**

To be entitled to damages under the CDPA, a plaintiff must establish that the violation "denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(a); *see also*

*Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 183 (1990). The Court must therefore determine which barriers denied Plaintiff equal access at the Hotel, and for which she is thus eligible for damages. Plaintiff argued at trial that she encountered barriers in the parking lot, the lobby and registration counter, the guestroom, the pool and spa, the fitness center, the bar and restaurant, and various paths of travel around the Hotel. However, Defendants contend that Plaintiff did not encounter all of the violations contained in the Complaint and that damages should be limited to only those she actually encountered or confronted. Plaintiff argues that she need not personally encounter barriers to recover damages.

Recovery of statutory damages is permitted only if a violation actually denied the plaintiff "full and equal access"—that is, only if "the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(b). Thus, a deterrence claim can also provide a basis for damages under the CDPA. *See also Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994) ("[W]here a plaintiff can prove that violations of applicable California disability access standards deterred her on a particular occasion from attempting to attend a place of public accommodation, that plaintiff states a claim for relief under [the CDPA].").

Here, Plaintiff has presented evidence that she actually encountered, or was deterred from accessing, most of the alleged violations. Plaintiff testified that she actually faced physical barriers in the parking lot, at the registration counter, in the guestroom, in the Hotel bar and restaurant, and in various paths of travel throughout the Hotel. She was also deterred from using the pool and hot tub when she discovered there was no lift for the pool and she was unable to open the pool gate while in her wheelchair. Although Plaintiff did not face physical

barriers by actually trying to enter the pool area, she was deterred from accessing the area when she realized there were barriers denying her equal access to it.

Plaintiff also presented evidence of violations in the fitness center, such as that its door was too heavy and that certain equipment was located in a manner that made it inaccessible. However, Plaintiff did not present evidence at trial that she personally encountered or was deterred by barriers in the fitness center. The Court therefore finds that Plaintiff is not entitled to damages based on barriers in the fitness center.

Accordingly, the violations identified by Plaintiff, with the exception of those in the fitness center, are actionable. The Court now turns to the question of what damages Plaintiff is entitled to.

**C. Damages to Which Plaintiff Is Entitled**

One who commits a violation of the CDPA is "liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in [the CDPA]." Cal. Civ. Code § 54.3. This provision thus sets forth a statutory minimum of $1,000 per violation.

The Court finds that the statutory minimum is an appropriate measure of damages in this case. At trial, evidence was presented that Plaintiff spent a limited amount of time at the Hotel during her visit. She arrived in the late afternoon on October 6, 2007, was away from the Hotel on October 7 from before

10:00 a.m. until after 8:30 p.m., and left in the early morning before 9:00 a.m. on October 8. Additionally, the Court finds the facts of this case similar to those of *Donald*, in which the plaintiff went to a restaurant with a specific social purpose of enjoying the restaurant's amenities and was denied access such that his purpose was defeated. 218 Cal. App. 3d at 181. The court found that the plaintiff was upset by the denial of access but concluded that the plaintiff suffered no actual damages. *Id.* Similarly here, Plaintiff and her mother presented evidence that the experience of being denied access at hotels is upsetting to Plaintiff, but Plaintiff did not otherwise demonstrate that she suffered actual damages. Accordingly, the Court believes that the statutory minimum of $1,000 per violation is appropriate here.

The Court finds that Plaintiff encountered or was deterred by the following violations at the Hotel. (1) In the parking lot, the designated accessible parking space had a built-up ramp and no accessible path of travel to the nearest entrance due to barriers that blocked the path. (2) In the lobby, the registration counter did not have a lowered portion, and there was no accessible table close by for use by disabled persons. (3) The guestroom door exceeded the maximum five pounds of opening pressure. (4) Inside the guestroom, furniture obstructed the floor space between the bed and closet. (5) The guestroom desk had insufficient knee clearance. (6) The guestroom toilet was configured in a way that interfered with the ability to transfer to and from the toilet. (7) The guestroom shower/tub was incorrectly configured, with knobs that required pinching and twisting, grab bars mounted at the wrong height, and no fixed transfer or shower seat. (8) The pool area was inaccessible because each entrance had a change of elevation, the gates did not have a 10-inch kickplate, and there was no pool lift. (9) In the bar and restaurant, the bar did not have a lowered section, the bar tables were all elevated, and the restaurant did not have wheelchair-accessible tables. (10) In the various

paths of travel around the Hotel, obstructions existed such as benches, trash receptacles, drop-offs that could cause an individual in a wheelchair to fall, ramps with slippery surfaces or excessive slopes, and noncompliant grab bars.[6]

**IV. CONCLUSION**

Based on its findings of fact and conclusions of law, the Court finds that Plaintiff is entitled to have judgment entered in her favor. The Court awards Plaintiff damages in the amount of $10,000.

IT IS SO ORDERED.

Dated: January 5, 2011

Honorable Jacqueline H. Nguyen
UNITED STATES DISTRICT COURT

[6] Plaintiff emphasizes the Hotel's failure to provide "Sleep Number" mattresses in the accessible guest rooms. However, testimony by Plaintiff's mother suggests that the nonuse of these mattresses was in compliance with the ADA. Therefore, the Court finds the evidence insufficient to deem the failure to provide "Sleep Number" mattresses a violation.